## Application of Polish National Alliance Lodge No. 2006, etc.

*Maurice P. Breene*, for appellant.

*Samuel J. Roberts*, for Liquor Control Board.

McCRACKEN, P. J., January 8, 1942.—The application of the Polish National Alliance Lodge No. 2006 for a club liquor license has been refused by the Liquor Control Board, and from this refusal an appeal has been taken to this court. The board assigned several reasons for its action. A number of these reasons have technical merit. There has been considerable confusion as to the exact identity of the organization known as the Polish National Alliance. It appears that at times this body was an integral part of a National society, and again it was purely local. The continuity of the organization could not be traced with any certainty. The records were poorly kept and, in fact, in many instances were evidently not kept at all. This confusion and failure to comply with the requirements of the bylaws of the alliance and the laws of the Commonwealth arose in large measure, if not entirely, from a lack of education on the part of those in charge of the affairs of the association. The officers stoutly maintain that the organization has been in existence and functioning for many years, and that the purposes thereof have been faithfully and fully carried out.

The board also assigned as a reason of revocation the failure of appellant to have a lease of the premises occupied by the club. The evidence on this point was vague and indefinite. The exact status of the title to the property occupied we are unable to determine. We are convinced that whatever uncertainty exists in this respect is not due to any intention on the part of the members to evade any duty or conceal any facts.

We feel we cannot give serious consideration to these reasons although licensees under the so-called "Liquor Acts" and "Beverage Acts" should realize that the privilege granted is subject to regulation and restriction, and a failure to meet the prescribed requirements will result in a suspension or revocation of their license.

It is set forth in the order of revocation that to grant the license in this case would be in violation of the Liquor License Quota Act of June 24, 1939, P. L. 806. This reason is, to our mind, the most difficult of solution, also the most vital.

The manufacture, sale, dispensing, and distribution of alcoholic beverages has always been a subject of regulation, restriction, or prohibition by the police power of the State. Many laws have been passed by this and other States in an effort to exercise this power in such a way as to keep the use, sale, and manufacture of intoxicating liquors within prescribed limits. A review of the history of the legislation in this State dealing with this subject will reveal a studied purpose to prevent the abuse of the privilege granted to licensees and others having the right to manufacture, transport, sell, and dispense alcoholic liquors. Since the repeal of the Eighteenth Amendment to the Constitution of the United States each session of the legislature has considered this matter largely and almost exclusively with a view to the enactment of more rigid regulations and the correction of evils connected therewith. Under the earlier statutes, if an applicant could otherwise qualify, the granting of his license was mandatory without

regard to the number of licenses already issued for any particular area. The evils resulting under these provisions are well known. To correct this situation the Liquor License Quota Act was passed and it is this phase of the Act of June 24, 1939, P. L. 806, we have to consider and interpret in disposing of the question presented here. This act has been before the courts in a large number of counties, and a sharp division of opinion has resulted. From these various and diverse opinions there is no appeal. To our mind this situation is to be regretted. It leads to confusion and often dissatisfaction. There should be a submission of this question to the appellate courts in order that a ruling may be made binding on all the courts of original jurisdiction. Thus uniformity would prevail and a far more satisfactory condition be established.

That the Act of June 24, 1939, supra, is poorly drawn is apparent. A conclusion contrary to the one hereafter announced can, in our opinion, only be reached by failing to take into consideration the statute as a whole, together with the mischief to be remedied. The first clause of section 2 of the Act of 1939 reads as follows:

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages, or the retail sale of liquor and malt or brewed beverages, in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels, as defined in this act, and clubs; but at least one such license may be granted in each municipality. . . . Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as

defined in this act, shall be granted so long as said limitation is exceeded."

In this section the legislature is providing a method or means of establishing a quota for a municipality. In other words, it is attempting to determine the number of licenses to be permitted within a given area. In making the calculation all licenses except those granted to "hotels, as defined in this act, and clubs" are included.

It appears that the population of Franklin, this county and State, according to the United States Decennial Census taken in 1940 was 9,948. Hence the quota for this municipality would be 10. Excluding licenses issued to hotels and clubs there were when the Liquor Control Board refused to issue a license to appellant 16 licenses for the sale at retail of malt, brewed, and distilled beverages in effect in this city. It is thus apparent that the quota was greatly exceeded.

The question, however, is definitely settled contrary to appellant's contention by a consideration of the latter portion of the act which reads as follows:

". . . but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded."

There can be no disagreement with respect to this provision. "No new license" certainly is exclusive, and would exclude even hotels unless specially excepted. Since hotels within the definition of the Quota Act are not to be counted, the limitation as to the granting of new licenses applies to restaurants, eating places, some hotels, and clubs.

Whatever confusion and ambiguity may have arisen in the construction of this act is dispelled when we apply the rules given for the construction of statutes. The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, provides:

"The object of all interpretation and construction of

laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions."

If the construction placed upon this act as given by some courts, for whose ability we have the highest regard, is accepted, then the very evident intent of the legislature would be frustrated for the reason that by such a construction there would be no limit to the number of club licenses that might be issued, whereas the act specifically provides that "no new license . . . shall be granted".

In construing an act of the legislature the Statutory Construction Act, art. IV, sec. 51, provides, insofar as applicable, as follows:

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects . . ."

We have already discussed the evils growing out of the former legislation and the mischief to be remedied. It has been urged by some courts that the object of the legislature in enacting this statute was to eventually eliminate all places where liquors and brewed and malt liquors were sold, except clubs. This view was adopted on the theory that dispensing liquors in clubs was far less evil than in restaurants and eating places. We know of no evidence justifying such a conclusion. In addition, if this theory is adopted the multiplication of clubs would equal that of restaurants and eating places. The "mischief to be remedied" would then be transferred to clubs, and evidently the mischief would remain. The very evident and indisputable purpose of this legislation is to limit the places where liquor and certain beverages can be obtained. This purpose can-

not be accomplished if either restaurants, eating places, or clubs are to be licensed without limit, and, in our opinion, the Liquor License Quota Act was passed to assure that result. We call attention to the portion of the Statutory Construction Act which provides as follows: "Whenever a general provision in a law shall be in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the Legislature that such provision shall prevail." (46 PS §563, Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 63.)

In line with the above we find section 64 (46 PS §564) of the same act provides as follows:

"Except as provided in section sixty-three, whenever, in the same law, several clauses are irreconcilable, the clause last in order of date or position shall prevail."

Plainly this provision compels one to so interpret the statute as to give full effect to the latter part thereof, namely, "but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded."

A few courts in this Commonwealth construing this statute have reached a conclusion contrary to the one here expressed, but the great weight of authority sustains the interpretation given here. It is likewise sustained in our opinion by effectuating the statute in its entirety as well as carrying into effect the very evident intent of the legislature.

It has been urged that the act is unworkable and leads to absurd results. We do not share that view. But granting the validity of the assertion the remedy, if needed, is with the legislature and not with the courts.

We cannot legislate. We can only interpret the acts passed by the legislature guided by the rules which it has prescribed and the purpose to be accomplished by a consideration of the act as a whole. We are confident that thus viewed no difficulty in ascertaining the meaning of the statute will be encountered.

And now, January 8, 1942, the appeal is dismissed and the action of the Liquor Control Board in refusing appellant's application sustained.